## HERMAN PETERSON v. RAYMOND BROS. MOTOR TRANSPORTATION, INC. AND ANOTHER.[1]

March 18, 1938.

No. 31,504.

[1]Reported in 278 N. W. 471.

*Mortimer H. Boutelle, Walter H. Newton,* and *Olof L. Bruce,* for appellant.

*William H. Freeman,* for respondents.

HOLT, JUSTICE.

Plaintiff appeals from the order denying his motion for a new trial after verdict in favor of defendants by five-sixths of the jurors.

The action was for personal injuries suffered and property damages sustained in a collision on Main street in Sauk Center, this state, between the Chevrolet coupé plaintiff was driving and a truck of the defendant corporation coming from the north and driven by its servant, defendant Solberg. The accident happened about 5:15 in the afternoon of March 10, 1936. Main street runs north and south through the city. It is a paved trunk highway. For two blocks north of Seventh street, which intersects at right angles, Main street has a ten-foot boulevard in the center with a 20-foot driveway on either side. From the south curb line of Seventh street, for a distance of about 200 feet south, the pavement on Main street is 50 feet wide between curbs. At that point Eighth street runs into Main street from the southeast at an angle of 40 degrees, and the pavement narrows to about 22 feet as it passes between the cement piers which support the viaduct carrying the tracks of the Great Northern Railway Company over Main street, at an angle of 40 degrees, from the northwest to the southeast. From Seventh street down to the viaduct Main street slopes to the south quite perceptibly; also south of the viaduct Main street runs upgrade

even more noticeably. Consequently, in times of heavy rains or excessive melting of snow in spring, more water accumulates under the viaduct than the storm sewers provided can carry off, and a pool of water results that at times stalls motor vehicles. On the day in question a pool had so collected not only under the viaduct but for more than 100 feet north and south thereof and up into Eighth street east. To warn drivers of cars of the condition, the highway patrol department had placed two red flags, one on the boulevard just north of Seventh street and one 150 feet farther north. Just prior to the accident plaintiff drove his car from his home on Oak street into Seventh street, then turned east toward Main street and, on reaching the latter, drove south thereon, intending to cross over into Eighth street and proceed southeasterly thereon to a dwelling he was to repair some blocks east of Main street. As he crossed over Main street to enter Eighth street east he opened the left door of his car. He found deeper water on Eighth street than anticipated and concluded that it would be safer to back up and turn north on Main street and then go easterly to his destination by some other street. As he was on the easterly edge of Main street, Solberg coming from the north with the truck observed plaintiff. Solberg testified that he saw plaintiff backing, saw him stop, then start backing over the center line when the truck was too near to avoid striking the rear left corner of plaintiff's car. The truck had a load of eight tons; its own weight was six tons. It was of the semitrailer type, 28 feet long. The complaint alleged various acts of negligence of Solberg as the cause of the collision, such as excessive speed, lack of control, driving upon the wrong side of the street, absence of warning, and failure to keep a proper lookout. The joint answer of the defendants denied the negligence charged, and averred that if plaintiff was injured or damaged his injury and damage was caused or contributed to by his own negligence.

The assignments of error in this court have been conveniently grouped by appellant under three headings. The first and principal one argued with great earnestness is that the verdict is against the greater weight of the evidence and is contrary to law. There were

two decisive issues tried—the negligence of Solberg and the contributory negligence of plaintiff. A finding in favor of defendants upon either one, if adequately supported by evidence, would satisfactorily account for the verdict. These two issues were submitted to the jury in a charge to which no exception was taken, nor is any ruling admitting or excluding evidence assigned as erroneous. Plaintiff did not ask the court to instruct the jury that the evidence adduced by defendants was insufficient to establish the defense of contributory negligence; nor did he request the court to charge that any one of the negligent acts or omissions charged in the complaint against defendants had been proved as a matter of law. However, for the purpose of this decision, we may assume that upon Solberg's own testimony the truck was driven through the residential district of Main street at an unlawful rate of speed, and that the jury so found. Whether such unlawful speed was the proximate cause of the collision was, perhaps, a jury question. On all other charges of negligence made against the driver of the truck there was a fair conflict in the evidence. But, as stated, assuming that the jury found that Solberg by his negligence caused the collision, is the finding, then implicit in the verdict, that plaintiff by his negligence contributed thereto, sustained by the evidence? No attempt will be made to state in detail the testimony of either plaintiff, or Solberg, or of any other eyewitness. It is enough to say that there was positive evidence not only from Solberg but from disinterested witnesses that plaintiff's car when struck by the left front corner of the truck was actually in motion backing with the rear projecting over the center and into the west side of Main street. On the other hand, plaintiff and also disinterested witnesses testified that plaintiff's car was entirely on the east half of Main street and at rest when struck. Some of these witnesses were on the east side, some on the west side of Main street, some north, and others south of the point of collision, and one on the viaduct above the center of Main street. It all happened within the space of a few seconds. Perhaps to none was an accident anticipated. That each witness would see and fix in his mind's eye the same fact as respects distances, speed, position, and course of each vehicle at the moment

of contact or just prior thereto, or directly thereafter, is not to be expected. One person fastens on some feature of the occurrence which wholly escapes another whose eye and mind are attracted to a different feature thereof. Plaintiff, by the collision, was bodily projected from the car into the pool of water, and so were the carpenters' tools he had in the coupé, yet no witness testified to seeing either plaintiff or the tools hurled from the vehicle. Not a glass in plaintiff's car was cracked or broken. Only one witness testified that the contact moved the coupé, and he merely said it spun almost completely around. But plaintiff's counsel vigorously contends that the physical facts completely disprove the testimony of Solberg and defendants' witnesses to the effect that plaintiff's car was in the act of backing into the west half of Main street when struck. This claim is based on the fact that after the contact the coupé was on the east half of Main street, and there also plaintiff was found as well as most of his scattered tools. As already stated, no witness saw plaintiff as he was thrown from the car, nor how the tools flew out. The water appeared to be 12 to 18 inches deep, and where either person or tools would light when hurled from a whirling vehicle would depend upon the force and direction when ejected therefrom. What has been said is enough to show that the physical facts do not disprove the testimony adduced by defendants to establish plaintiff's contributory negligence within the line of such cases as Larsen v. N. P. Ry. Co. 185 Minn. 313, 241 N. W. 312, and those therein cited. Further discussion of the evidence would serve no useful purpose. A careful reading of all thereof with an open mind leads to the conclusion that its greater weight sustains defendant's claim that plaintiff was backing his car over onto the west side of Main street in the path of the oncoming truck as the impact came. In this connection it may be well to call attention to what the jury might have found impaired or discredited the testimony of three of plaintiff's principal witnesses as to his car being at rest and on the east half of Main street when struck. The one of these in the most favorable place for observation and somewhat experienced as a truck driver was Mr. Rose, who admitted, on cross-examination, that immediately after the accident he went up to Solberg, whom he did

not know, and complimented him upon having so driven as not to run into the children gathered at the railing, where the pavement narrows to pass between the cement piers supporting the viaduct. One who has thus voluntarily expressed admiration for another's conduct at the time he beheld it cannot afterwards with good grace assert that what he saw made such conduct reprehensible and negligent. A jury might well doubt the accuracy of observation and intelligence of the witness Mathies, 26 years old, who had lived all his life in Sauk Center and could not tell in what direction Main street ran. Henry Johnson, 16 years old, who was a block and a half north of the point of collision when he heard the crash, attempted to locate plaintiff's car up against the east curb of Main street, insisted, contrary to the testimony of every other witness, that plaintiff was taken from the pavement into the filling station on the west side of Main street before being conveyed to the hospital. All other witnesses agreed that plaintiff was taken from the pavement and placed upon a beer truck which drove directly to the hospital. We have no doubt that the evidence justified the submission to the jury of the defense of plaintiff's contributory negligence, and, further, that the finding of such negligence, implicit in the verdict, is not contrary to the greater weight of the evidence, but well supported thereby. The law is well established which governs this court in reviewing an order denying a motion for a new trial on the ground that the verdict is contrary to the greater weight of the evidence and contrary to law—or, more correctly, in the words of the applicable statute, 2 Mason Minn. St. 1927, § 9325(7), "that the verdict  *  *  *  is not justified by the evidence," or is contrary to law. See 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) §§ 7142, 7144, 7154, 7157, and the cases therein referred to, particularly those cited in notes 19 and 20 in § 7157. There is no warrant at all for claiming that the verdict is contrary to law, see 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 7161. Under well settled law, this court cannot reverse the order of the trial court refusing to grant a new trial on the ground that the verdict is not justified by the evidence.

Plaintiff assigns error on the denial of a new trial on the ground of misconduct of the jury and of defendants and their counsel. Only the jurors Mrs. Thomas and Mr. Orman were suspected of misconduct. Numerous affidavits and counter-affidavits were submitted by both sides at the hearing of the motion. All the jurors except two, not available, made affidavits. Parts of the jurors' affidavits sought to disclose what took place in the jury room and should not be considered. The juror Peterson, who did not sign the verdict, furnished the occasion for the suspicion of misconduct. He was so distressed by what he deemed the injustice of the verdict that he went to the office of plaintiff's attorney and informed him of what he thought was misconduct of juror Orman and defendant Solberg. The trial court, in addition to considering the affidavits adduced, had the jurors Peterson and Orman brought into court, put them under oath, and examined each thoroughly, in the presence of the counsel for both parties, relative to any communication between Orman and Solberg or other interested parties. The court was evidently satisfied from the affidavits submitted that the charge of misconduct of juror Thomas was wholly unfounded. Mr. Orman emphatically denied any talk about the case with Solberg or any other party. The trial court was convinced that there was no misconduct on the part of any juror and that there was no tampering with the jurors by defendants or by any of the named suspected attendants at the trial. We discover no reason in the record for holding that the court below erred in denying a new trial for misconduct of either the jury or the defendants.

The suggestion of misconduct of defendants' counsel in suppressing the testimony of 15-year old Warren Scott is scarcely worthy of mention. Mr. Geer, an associate of defendants' counsel, on March 3, 1937, went to Sauk Center for the purpose of finding and interviewing available witnesses. Among others he found and talked with Warren Scott and his mother as to what Warren knew of the accident. He told them that Warren's version did not agree with that of others interviewed. He promised to notify them as soon as he learned when plaintiff's case would be definitely set for trial, Warren and his mother say, so that Warren could be sent

beyond reach.  Mr. Geer says he made no suggestion of that sort. The record shows that on March 29, 1937, every person Mr. Geer had interviewed as having some knowledge of the accident was notified by mail that the case would be reached on Thursday of that week. The letter to Warren and his mother is substantially the same as to the other persons interviewed.  There was here no attempt at suppression of evidence.

The last assignment of error is the refusal of the court to grant a new trial on the ground of newly discovered evidence.  The newly discovered evidence proffered is that of Warren Scott just above referred to.  It appeared that 16-year old James Scott testified in behalf of defendants, and defendants' counsel elicited from him that Warren Scott, no relative to James, had also been upon the viaduct a few moments before the collision.  Warren professes to have stood where James Scott testified he was when the truck struck plaintiff's car.  Warren's story conflicts with that of James, particularly as to the location and movement of the two vehicles.  In Merek v. S. J. Groves & Sons Co. 200 Minn. 418, 420, 274 N. W. 402, 404, we said:

"Newly discovered evidence which merely contradicts and impeaches evidence adduced at the trial is no ground for a new trial, except in extraordinary cases.  The same is true if the newly discovered evidence is merely cumulative."

The position and movement of the two vehicles at about the moment of collision was testified to by other witnesses of plaintiff in substantially the same form as Warren says he can do.  So it is merely cumulative and impeaching of that given by James Scott and other of defendants' witnesses.  Warren brings forth nothing new, except that he is the only one who claims to have seen the tools flung from plaintiff's car.  He does not say that he saw plaintiff thrown out.  We also think plaintiff failed to show diligence in securing Warren's testimony.  As stated, defendants at the trial disclosed Warren's presence on the viaduct shortly before the accident.  All or nearly all of the eyewitnesses of the collision testified that from 8 to 15 school children were down by the viaduct near where James Scott and Warren Scott were; and, though some

of these might have been young, there is nothing to indicate that they were not mature enough to testify as to what they observed. Yet plaintiff called none of them. Plaintiff and his family, one a grown son, lived at Sauk Center, and it would seem that by proper effort Warren should have been found before the trial took place. It does not appear to this court that the court below abused judicial discretion in refusing to grant a new trial on the ground of newly discovered evidence.

The order is affirmed.

